IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROUND ROCK RESEARCH, LLC, | |
| Plaintiff, | |
| v. | C.A. No. 11-1239-RGA |
| DOLE FOOD COMPANY, INC. | |
| Defendant. | |

**DEFENDANT DOLE FOOD COMPANY, INC.'S REPLY BRIEF
IN FURTHER SUPPORT OF ITS MOTION TO STAY
<u>PENDING REEXAMINATION OF THE PATENTS-IN-SUIT</u>**

OF COUNSEL:
David C. Doyle
Brian M. Kramer
Pamela McElroy
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
(858) 720-5100

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
*Attorneys for Defendant
Dole Food Company, Inc.*

Dated:  March 19, 2012

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT ................................................................................................................... 2

      A.      Deferring to the PTO Will Simplify the Issues and Conserve the
            Resources of the Courts and Parties........................................................................ 2

      B.      Round Rock Will Not Be "Unduly Prejudiced" by a Stay .................................... 6

      C.      The Early Stage of The Litigation Strongly Favors A Stay................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Diabetes Care, Inc. v. DexCom, Inc.,*
  No. 06-514-GMS, 2007 U.S. Dist. LEXIS 73198 (D. Del. Sept. 30 2007)............................10

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.,*
  637 F.3d 1324 (Fed. Cir. 2011)..................................................................................................5

*Amgen Inc. v. F. Hoffmann-La Roche, Ltd.,*
  580 F.3d 1340 (Fed. Cir. 2009)..................................................................................................3

*Bausch & Lomb, Inc. v. Alcon Lab., Inc.,*
  914 F. Supp. 951 (W.D.N.Y. 1996) ..........................................................................................10

*Chiron Corp. v. Genentech, Inc.,*
  363 F.3d 1247 (Fed. Cir. 2004)..................................................................................................3

*CIMA Labs Inc. v. Mylan Pharms., Inc.,*
  No. 10-625-LPS, 2011 U.S. Dist. LEXIS 41584 (D. Del. Apr. 18, 2011) ................................2

*Cooper Notification, Inc. v. Twitter, Inc.,*
  No. 09-865-LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010) ..................................................7

*DJO, LLC v. VitalWear, Inc.,*
  No. 09cv2872-LAB (NLS), 2010 U.S. Dist. LEXIS 109832 (S.D. Cal. Oct. 15, 2010) ...........8

*eBay Inc. v. MercExchange, L.L.C.,*
  547 U.S. 388 (2006)....................................................................................................................7

*Heraeus Electro-Nite Co., LLC v. Vesuvius United States Corp.,*
  No. 09-2417, 2010 U.S. Dist. LEXIS 1887 (E.D. Pa. Jan. 11, 2010).......................................5

*In re Cygnus Telecomms. Tech., LLC,*
  385 F. Supp. 2d 1022 (N.D. Cal. 2005) ..............................................................................5, 10

*Spa Syspatronic, AG v. VeriFone, Inc.,*
  No. 2:07-CV-416, 2008 U.S. Dist. LEXIS 34223 (E.D. Tex. Apr. 24, 2008).........................8

*Tyco Fire Prods. LP v. Victaulic Co.,*
  No. 10-4645, 2011 WL 4632689 (E.D. Pa. Oct. 4, 2011) .......................................................10

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Vehicle IP, LLC v. Wal-Mart Stores, Inc.*,
    No. 10-503-SLR, 2010 U.S. Dist. LEXIS 123493 (D. Del. Nov. 22, 2010) .....................6, 8, 9

*Wall Corp. v. Bonddesk Group, L.L.C.*,
    No. 07-844 GMS, 2009 U.S. Dist. LEXIS 20619 (D. Del. Feb. 24, 2009) ..........................7, 9

## I.    INTRODUCTION

The case against Dole and the other end-users ("Customer Defendants") should be stayed pending the efforts of the two major RFID providers who have stepped in to challenge the Round Rock patents in both the PTO and this Court.  The reexamination requests filed by the first RFID provider are progressing quickly, with the PTO rejecting all independent claims of one of the patents-in-suit in a February 28, 2012 Office Action.  On March 14, 2012, another major RFID provider, Motorola Solutions, Inc. ("Motorola"), filed a declaratory judgment action in this Court, seeking a declaration that the Round Rock patents are invalid and not infringed by the RFID products it supplies to the Customer Defendants.

Round Rock argues that the case against the Customer Defendants should go forward because only a small portion of the claims of the patents-in-suit are in reexamination, but it overlooks the relationship between independent and dependent claims.  The scope of the dependent claims not formally in reexamination nevertheless will be affected because nearly all of the independent claims, which by definition are incorporated into the dependent claims, are undergoing reexamination.  Moreover, to the extent that the PTO did not choose to reexamine just 4 of 30 independent claims, those 4 claims have not been identified by Round Rock as being infringed by Dole, meaning they are not likely to be part of this litigation.

Round Rock strategically chose to sue Customer Defendants who are at a disadvantage when defending against allegations outside their core area of expertise.  The RFID providers are now injecting themselves into the battle.  Companies like Dole are caught in the middle.  Dole respectfully asks that the Court stay its case so that Round Rock's allegations can be addressed by the RFID providers.

## II.     ARGUMENT

The three factors relevant to a motion to stay pending PTO reexamination, (1) "whether a stay will simplify the issues [in question] and trial of the case;" (2), the stage of the litigation, meaning "whether discovery is complete and [whether] a trial date has been set;" and (3) "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party," *CIMA Labs Inc. v. Mylan Pharms., Inc.,* No. 10-625-LPS, 2011 U.S. Dist. LEXIS 41584, at *6 (D. Del. Apr. 18, 2011) (granting stay), favor a stay in this case.  Round Rock's arguments to the contrary are based upon misapplications of basic tenets of patent law.

### A.     Deferring to the PTO Will Simplify the Issues and Conserve the Resources of the Courts and Parties

To date, 26 of the total of 30 independent claims found in Round Rock's five patents-in-suit remain potentially at issue in the reexamination proceedings.[1]  Round Rock makes much of the fact that the patents contain 186 independent and dependent claims combined, suggesting that the reexamination proceedings can have no impact on the claims not formally reviewed by the examiner.  (D.I. 18 at 3, 5, 12.)  However, Round Rock ignores one of the most basic tenets of patent law, namely, that the scope of dependent claims is defined as a function of the independent claims within a patent.  *See* 35 U.S.C. § 112 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.").

---

[1] The PTO ordered reexamination of two additional Round Rock patents (U.S. Patent Nos. 5,500,650 and 5,627,544), since Dole filed its opening brief.  (D.I. 18, Exs. A, B.)  The request for reexamination of the final patent-in-suit, U.S. Patent No. RE 41,531, has not yet been ordered; but it is progressing.  On February 28, 2012, the PTO attempted to contact the patent owner of record as part of a pilot program seeking waiver of the patent owner's statement in a reexamination proceeding.  (Declaration of Pamela McElroy In Support of Dole's Reply In Support of Motion to Stay ("McElroy Reply Decl.") Ex. K.)   That request was sent to the former attorney for the patent owner.  On March 15, 2012, Plaintiff's counsel filed a Power of Attorney, changing the attorney of record to Round Rock's litigation counsel.  (*Id.* Ex. L.)

Because a dependent claim incorporates its underlying independent claim, a dependent claim must be read as if the language of the claim from which it depends were also part of the dependent claim.  Thus, while dependent claims may be *presumed* valid even after the independent claims on which they rely are invalidated, any reexamination decisions made by the PTO regarding the validity or scope of the independent claims will necessarily impact the construction of the dependent claims, which will directly affect the issues to be addressed by the Court.  *See, e.g., Amgen Inc. v. F. Hoffmann-La Roche, Ltd.,* 580 F.3d 1340, 1381 (Fed. Cir. 2009) (multiple dependent claims held invalid because the independent claim contained an indefinite term).  And where validity challenges to independent claims coincide with validity challenges to dependent claims, a dependent claim may even be invalidated solely because its independent claim is found invalid.  *See Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1260 (Fed. Cir. 2004) (upholding jury instructions stating that "the validity of the dependent claims stands or falls with the validity of the independent claims").

While the RFID provider's first set of reexamination requests focused on the independent claims, including those specifically identified as being infringed by Dole, the invalidity analysis of the corresponding dependent claims will be impacted by the reexamination proceedings.[2]  For example, while newly identified dependent claim 17 of the '726 patent is not in the first set of reexamination proceedings, its independent claim 15 is undergoing reexamination.  The two claims read:

> 15. [undergoing reexamination]  A communication system comprising: an interrogator including: a data path configured to communicate a data signal; a signal generator configured to output a carrier signal; and a

---

[2] Round Rock's Opposition identifies five new claims that it had never before mentioned in discussions between Round Rock and Dole.  As Round Rock's infringement allegations change, and as some claims are not subjected to reexamination, new reexamination requests likely will be filed based on different prior art specifically challenging the newly asserted claims.

modulator configured to spread the data signal to define a spread data signal, filter the spread data signal to define a filtered data signal, amplitude modulate the carrier signal using the filtered data signal, phase modulate the carrier signal using the filtered data signal, and output the amplitude modulated and phase modulated carrier signal; and an electronic communication device configured to receive the amplitude modulated and phase modulated carrier signal and output a reply signal responsive to reception of the amplitude modulated and phase modulated carrier signal.

\* \* \*

17. The communication system according to claim 15 wherein the communication system comprises a backscatter communication system.

(D.I. 1 Ex. D at '726 patent, col. 13, ll. 26-43; 49-51.)

Dependent claim 17 adds only "[t]he communication system according to claim 15 wherein the communication system comprises a backscatter communication system."  This additional limitation will not save dependent claim 17 if independent claim 15 is invalidated during reexamination.  Backscatter technology has been known since 1948.  *See* Harry Stockman "Communication by Means of Reflected Power" in *Proceedings of the I.R.E.*, vol. 36:1196-1204 (1948).  (McElroy Reply Decl. Ex. M.)  Before April 24, 1997, a year prior to the filing of the '726 Patent, there were more than 3,000 U.S. Patents describing the concept of backscatter and specifically using the term backscatter.  (McElroy Reply Decl. ¶ 5.)  Thirty-one of these patents also discuss RFID technology, indicating that not only was backscatter technology well-known, its application to RFID was also known.  (*Id.* ¶ 6.)  While the RFID provider filing the reexamination requests has so far only asked the PTO to invalidate claim 15, there is little need to invalidate dependent claims that merely narrow the claims by identifying well known ways to implement the independent versions of the claims.  To invalidate claim 17, one need only show that the backscatter technology was or could be used in the same references that rendered claim 15 invalid.  If the reexamination proceedings wipe out claim 15, Round Rock will not be able to

4

seriously argue to this Court that litigation is required to show that dependent claim 17 is novel or nonobvious because it uses backscattering.

The same exercise can be performed on each dependent claim identified for the first time in Round Rock's Opposition.  Until the PTO issues its reexamination determinations, the Customer Defendants cannot determine if the dependent claims will change based on changes to the underlying independent claims.  Given the relationship between independent and dependent claims, and the fact that 77% of reexaminations granted between 1991 and 2011 have resulted in either cancellation or at least some claim changes, the PTO's reexamination will likely narrow or eliminate the invalidity analysis for all claims, not just the independent claims.  (*See* D.I. 14, Ex. J at 3.)  These circumstances create "a significant likelihood" that reexamination "will simplify the issues in question by altering the claims."  *Heraeus Electro-Nite Co., LLC v. Vesuvius United States Corp.*, No. 09-2417, 2010 U.S. Dist. LEXIS 1887, at *4 (E.D. Pa. Jan. 11, 2010) (noting that while "89 percent of reexaminations conclude with at least some of the patent's claims surviving the reexamination process, many of those claims emerge from reexamination in a different form"); *see also Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336-1337 (Fed. Cir. 2011) (statements made during reexamination affect claim construction).

Furthermore, the benefits of this simplification and narrowing of issues exist even where the validity of the claims considered upon reexamination is later subject to litigation.  *See Heraeus Electro-Nite*, 2010 U.S. Dist. LEXIS 1887, at *5 (noting that while the "ability to relitigate the validity of the patents at trial after reexamination reduces some of the potential for simplification, the benefits of simplification still accrue for any claims that the PTO cancels or amends"); *In re Cygnus Telecomms. Tech., LLC*, 385 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005) ("For those claims that survive the reexamination, this court may have a richer prosecution

history upon which to base necessary claim construction determinations or reconsideration").
The potential for simplification of issues thus favors granting a stay.

### B.    Round Rock Will Not Be "Unduly Prejudiced" by a Stay

Round Rock is a non-practicing entity ("NPE") that claims it owns the "fundamental patents" covering the EPC Gen-2 RFID industry standard.  Round Rock does not invent, design, manufacture, or sell any products.  Dole is a food company.  It does not compete with Round Rock.  Dole had absolutely no role in designing the RFID products it purchased off the shelf from third party vendors.  It likewise had no role in setting the RFID industry standard that Round Rock says it now owns.  Round Rock will not be unduly prejudiced if the Court stays the case against Dole while the major RFID providers challenge Round Rock's patents, both in the PTO and in the related declaratory judgment litigation filed by Motorola.  *See Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, No. 10-503-SLR, 2010 U.S. Dist. LEXIS 123493, at *6-7 (D. Del. Nov. 22, 2010) (granting a stay and finding "[o]f particular importance is the fact that plaintiff does not develop or sell any products of its own and is not a competitor of defendants").  Round Rock's Opposition does not address these factors.  Instead, Round Rock raises purported concerns over stale evidence, its ability to enforce the patents during the pendency of the litigation, and "tactical advantages" that Dole will supposedly gain from a stay in the litigation.

Round Rock first claims that "a protracted stay would likely raise issues with stale evidence, faded memories, and lost documents."  (D.I. 18 at 9.)  But Round Rock chose to sue customers instead of RFID providers.  Any evidence in Dole's possession at the time of the complaint will not become stale because Dole had little to no information about how the RFID products it bought were designed or even how they work.  The memories of Dole witnesses will not fade during the stay.  Dole need only remember what it bought, where it bought it, and when it bought it.  That is well documented, as one would expect from a highly regulated company

with food safety responsibilities.[3]  Dole will not lose any documents during the stay.  It initiated

a litigation hold long before Round Rock filed suit.  Under these circumstances, Round Rock's

stale evidence concerns are both "speculative" and completely "irrelevant to [the Court's]

determination of prejudice and tactical advantage."  *See Wall Corp. v. Bonddesk Group, L.L.C.*,

No. 07-844 GMS, 2009 U.S. Dist. LEXIS 20619, at *4 n.1 (D. Del. Feb. 24, 2009).

Round Rock next cites *Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865-LPS, 2010

WL 5149351 (D. Del. Dec. 13, 2010), and argues that a stay will hinder Round Rock's ability to

enforce its RFID patents during the litigation stay.  (*See* D.I. 18 at 10.)  *Cooper Notification* is

inapposite.  The parties in that case were direct competitors.  2010 WL 5149351, at *5.  The

motion for a stay came following the PTO's grant of an *inter partes* reexamination request filed

by the defendant in the litigation more than eight months after the complaint and after significant

resources had been devoted to litigation.  *Id.* at *3-4.  The *Cooper* Court's concern about the

plaintiff's right to enforce its patents was premised on plaintiff's possible right to an injunction

through the litigation.  *See id.* at *4.  Round Rock is seeking only money from Dole.  Even if it

asked for an injunction, it would not be entitled to one.  As an NPE plaintiff, it faces no

competition from Dole, and it can be adequately compensated by money damages for any injury.

*See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (listing factors favoring

injunctive relief).  Thus, a stay will have no measurable impact on Round Rock's ability to

enforce its patents and cannot unduly prejudice Round Rock on that basis.

Finally, Round Rock argues that Dole seeks an "unwarranted tactical advantage" by

seeking a stay without waiving the right to raise arguments presented to the PTO in subsequent

---

[3] Dole's lack of documents does not mean that litigation will not be burdensome.  Not knowing
how the RFID equipment it buys was designed and developed is not a defense to patent
infringement.  Thus, Dole is forced to become an RFID expert to figure out how to defend the
allegations of infringement.

litigation.  (*See* D.I. 18 at 10.)  Dole admits that a stay pending patent reexamination would stymie Round Rock's tactical advantage obtained by suing and placing upon the Customer Defendants the burden to defend and prove things about which they knew very little before being dragged into this case – namely whether the EPC Gen-2 RFID standard is covered by Round Rock's patent and whether Round Rock's patents are valid and enforceable.

Round Rock suggests that some of the alleged prejudice would be alleviated if Dole would waive all invalidity defenses if the major RFID provider fails to eliminate every claim during reexamination.  That argument impermissibly attempts to import the Patent Act's estoppel rules for *inter partes* reexamination into the *ex parte* reexamination at issue in this case. *Compare* 35 U.S.C. § 315(c) (estopping a third party requestor whose *inter partes* reexamination request is granted from later challenging the validity of a patent on grounds that the requestor did or could have raised during reexamination); *with* 35 U.S.C. §§ 302-307 (governing *ex parte* reexamination).  Imposing estoppel provisions following *ex parte* reexaminations makes little sense given that an *ex parte* requestor has no input in the proceeding after the request is filed. *See* 35 U.S.C. §§ 302-307.  Thus courts—including this Court—granting stays pending resolution of *ex parte* proceedings routinely do so *without* requiring any estoppel stipulations from defendants, disproving the contention that a stay absent such a stipulation would prejudice Round Rock.  *See, e.g., Vehicle IP*, 2010 U.S. Dist. LEXIS 123493, at *4-5 (entering stay and not requiring stipulation); *DJO, LLC v. VitalWear, Inc.,* No. 09cv2872-LAB (NLS), 2010 U.S. Dist. LEXIS 109832, at *6-7 (S.D. Cal. Oct. 15, 2010) (same); *Spa Syspatronic, AG v. VeriFone, Inc.*, No. 2:07-CV-416, 2008 U.S. Dist. LEXIS 34223, at *4 (E.D. Tex. Apr. 24, 2008) (same). Because neither Dole nor any of the Customer Defendants are the *ex parte* reexamination requesters, forcing the parties to waive invalidity defenses in exchange for a stay makes even less

8

sense.  The Court should not afford Round Rock both complete control of the *ex parte* reexamination proceedings and the estoppel effects granted only in the *inter partes* context. Round Rock's inability to gain such an unfair advantage does not constitute undue prejudice.

### C.      The Early Stage of The Litigation Strongly Favors A Stay

Round Rock claims that the early stage of this litigation is neutral regarding the imposition of a stay.  That is not accurate.  The early stage of litigation weighs in favor of a stay where, as here, no scheduling order has been entered, discovery has not commenced, no trial date has been set, and Dole's motion to stay was filed before the pleadings were closed and before the Court set the March 28 scheduling conference.  *See Wall Corp.*, 2009 U.S. Dist. LEXIS 20619, at *4 (stage of litigation favored stay where discovery deadlines and trial date were set, but defendant had filed motion to stay before scheduling conference and entry of scheduling order); *see also Vehicle IP*, 2010 U.S. Dist. LEXIS 123493, at *4 (early litigation favors stay).

The reexamination is progressing quickly.  Round Rock failed to mention in its Opposition that on February 28, 2012 (after Dole's opening brief, but before Round Rock's Opposition), the PTO entered an office action rejecting all independent claims of U.S. Patent No. 5,974,078 ("the '078 patent").  (McElroy Decl. Ex. N.)  This rejection of claims is the second stage in the reexamination process, following the PTO's initial determination that the requests for reexamination raised "substantial questions of patentability."  With formal claim rejections now on file, it cannot be said that the reexaminations are still in the "early stages."

Round Rock also argues that a stay is "premature" because Dole and the other RFID Defendants have not provided invalidity contentions to Round Rock beyond those already raised in the reexamination petitions.  (D.I. 18 at 14, 15.)  This is another thinly-veiled attempt to gain an unfair advantage.  Round Rock seeks to "cleanse" for litigation purposes the Customer Defendants' invalidity contentions by submitting them to the PTO in an *ex parte* proceeding,

9

spinning them in a light favorable to Round Rock, and keeping the Customer Defendants from having a role in the conversation about their own invalidity contentions.  Round Rock cites no cases stating that the early stage of litigation weighs against a stay, and two largely irrelevant cases considering stays when invalidity contentions had either already been or were soon to be provided in the natural progression of the cases.  (*See id.* (citing *Tyco Fire Prods. LP v. Victaulic Co.*, No. 10-4645, 2011 WL 4632689, at *1, *4 n.3 (E.D. Pa. Oct. 4, 2011)) (denying stay sought by plaintiff who filed reissue application in a suspected "litigation gambit" after receiving defendant's proposed claim construction and invalidity contentions); *In re Cygnus*, 385 F. Supp. 2d at 1024, 1025 (holding stay would go into effect after defendants provided invalidity contentions where litigation had already "resulted in sixteen judgments," and plaintiff had served preliminary infringement contentions)).)

Moreover, researching, drafting, and hiring experts for invalidity contentions is a burdensome and expensive exercise that will likely cost Dole more than $200,000.  The main point of requesting a stay is to avoid expense and effort that may be mooted or altered by the reexamination.  *See Bausch & Lomb, Inc. v. Alcon Lab., Inc.*, 914 F. Supp. 951, 953 (W.D.N.Y. 1996) (noting the primary purposes of a stay is to avoid wasting the "time, resources, and significant efforts of all those involved); *see also Abbott Diabetes Care, Inc. v. DexCom, Inc.,* No. 06-514-GMS, 2007 U.S. Dist. LEXIS 73198, at *15 (D. Del. Sept. 30 2007) (finding that a stay will "save time and judicial resources").  Dole respectfully requests that the Court stay the case so that it will not have to incur these expenses, essentially on behalf of the entire community of RFID users, until the PTO resolves the reexamination proceedings.

Respectfully submitted,

SHAW KELLER LLP

OF COUNSEL:                                    _/s/  John W. Shaw_____
David C. Doyle                                 John W. Shaw (No. 3362)
Brian M. Kramer                                Karen E. Keller (No. 4489)
Pamela McElroy                                 300 Delaware Avenue, Suite 1120
MORRISON & FOERSTER LLP                        Wilmington, DE 19801
12531 High Bluff Drive                         (302) 298-0700
San Diego, California  92130-2040              jshaw@shawkeller.com
(858) 720-5100                                 kkeller@shawkeller.com
                                               *Attorneys for Defendant*
                                               *Dole Food Company, Inc.*
Dated:  March 19, 2012

11